UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- v. -

ALEXANDER GULKAROV,
    a/k/a "Little Alex,"
ROMAN ISRAILOV,
    a/k/a "Roman Matatov,"
PETER KHAIMOV,
    a/k/a "Peter Khaim,"
ROBERT WISNICKI,
ANTHONY DIPIETRO,
ROLANDO CHUMACEIRO,
    a/k/a "Chuma,"
MARCELO QUIROGA, and
ALBERT ARONOV,

              Defendants.

**ORDER**

22 Cr. 20 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        Alexander Gulkarov and Roman Israilov are the lead defendants in an indictment charging health care fraud conspiracy, in violation of 18 U.S.C. § 1349 (Indictment (Dkt. No. 1) Count One); money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (id., Count Two); Travel Act bribery conspiracy, in violation of 18 U.S.C. § 371 (id., Count Three); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (id., Count Six). Gulkarov is also charged with conspiracy to obstruct justice, in violation of 18 U.S.C. § 371. (Id., Count Four)

        Gulkarov was arrested and presented in the Southern District of Florida on January 12, 2022. (SDFL Bail Disposition (Dkt. No. 23) at 38) Israilov was arrested and presented in this District that same day. (Bail Disposition (Dkt. No. 12)) With the consent of the Government, both were released on a bail package. (Id.; SDFL Bail Disposition (Dkt. No. 23) at 40-45)

The pretrial release orders for Gulkarov and Israilov bar them from having contact – outside the presence of counsel – with certain alleged co-conspirators. Gulkarov's bail order prohibits him from having contact with co-defendants and defendants in the related case of United States v. Rose, 19 Cr. 789 (PGG). (SDFL Bail Disposition (Dkt. No. 23) at 41) Israilov's bail order prohibits him from having contact with his co-defendants. (Bail Disposition (Dkt. 12)) Gulkarov and Israilov seek a modification of their bail orders permitting them to have contact with each other outside the presence of counsel. (Jan. 19, 2022 Jt. Def. Ltr. (Dkt. No. 34); Jan. 20, 2022 Israilov Ltr. (Dkt. No. 44)) The Government opposes their application. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41))

## BACKGROUND

On January 12, 2022, Magistrate Judge Jonathan Goodman, sitting in the Southern District of Florida, approved Gulkarov's bail package (SDFL Bail Disposition (Dkt. No. 23) at 51), which provides that he "must . . . avoid all contact with co-defendants and defendants in related cases, except through counsel: including U.S. v. Rose, 19 CR 789." (Id. at 38) That same day, Magistrate Judge Moses in this District approved Israilov's "agreed conditions of release," which include that he "is to have no contact with his co-defendants except in the presence of counsel." (Bail Disposition (Dkt. No. 12))

The agreed-upon conditions for Gulkarov's pretrial release include the following:

1) a $10 million personal recognizance bond, co-signed by 5 financially responsible persons, and fully secured by real property pledged by the co-signors by confession of judgment. The co-signors shall sign the bond by no later than January 20, 2022 and shall file confessions of judgment by no later than January 27, 2022. The addresses of the property to secure the bond are as follows:

   a. 11045 68TH ROAD FOREST HILLS, NY 11375
   b. 6872 112TH ST FOREST HILLS, NY 11375
   c. 332 BLANDINA STREET UTICA, NY 13501

      d. 312 BLANDUNA STREET UTICA, NY 13501
      e. 804 1ST STREET UTICA, NY 13501 f. 11023
      f. 71ST AVENUE FOREST HILLS, NY 11375
      g. 7010 173RD STREET FRESH MEADOWS, NY 11375

2) travel restricted to the Southern District of New York, the Eastern District of New York, and the District of New Jersey

3) surrender of all travel documents and no new applications [and]

4) pretrial supervision as directed by the Pretrial Service Office. . . .

(Jan. 18, 2022 Jt. Ltr. (Dkt. No. 29) at 1; Jan. 20, 2022 Jt. Ltr. (Dkt. No. 39) at 2)

      In addition to these conditions, the Government contends that Gulkarov should be prohibited from having contact – outside the presence of counsel – with his co-defendants as well as alleged co-conspirators in the related cases of United States v. Rose, et al., 19 Cr. 789 (PGG) and United States v. Pierre, et al., 22 Cr. 19 (PGG). (Jan. 18, 2022 Jt. Ltr. (Dkt. No. 29) at 1; Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41)) Gulkarov objects to this condition to the extent that it prevents him from having unsupervised contact with Israilov, who is his brother in law. (Jan. 19, 2022 Jt. Def. Ltr. (Dkt. No. 34) at 1)

      The agreed-upon conditions for Israilov's pretrial release include the following:

1) a $500,000 personal recognizance bond co-signed by three financially responsible persons;

2) travel restricted to the Southern and Eastern Districts of New York;

3) surrender travel documents and no new applications for travel documents; and

4) pretrial supervision as directed by the Pretrial Services Office. . . .

(Bail Disposition (Dkt. No. 12))

      In addition to these conditions, the Government contends that Israilov should be prohibited from having contact – outside the presence of counsel – with his co-defendants. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41)) Israilov objects to this condition to the extent that it prevents

3

him from having contact with Gulkarov outside the presence of counsel.  (Jan. 19, 2022 Jt. Def. Ltr. (Dkt. No. 34); Jan. 20, 2022 Israilov Ltr. (Dkt. No. 44))

Gulkarov and Israilov – who are brothers-in-law – contend that the condition barring them from having contact outside the presence of counsel is unnecessary, and would disrupt family gatherings.  They propose the following provision as a substitute to that sought by the Government:

> Defendants Gulkarov and Israilov are permitted to meet, outside the presence of counsel, for the limited purpose of attending family gatherings.  The defendants are not permitted to meet alone and must accompany at least one other adult at these meetings.  Defendants also must notify Pretrial Services at least 24 hours in advance of their meeting.  Defendants will notify their Pretrial Services Officer of the nature of the family event, and the place and time of the meeting.

(Jan. 19, 2022 Jt. Def. Ltr. (Dkt. No. 34) at 3)

## DISCUSSION

### I.    LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3142(g), directs courts to consider the following factors, among others, in determining whether pretrial release is appropriate, and in setting appropriate conditions for pretrial release:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the [defendant];
>
> (3) the history and characteristics of the [defendant], including . . . the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and

4

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. . . .

18 U.S.C. § 3142(g).

Potential "danger to any person or the community" includes the risk that a defendant might cause financial or "'economic harm'" if granted pretrial release. United States v. Dupree, 833 F. Supp. 2d 241, 253 (E.D.N.Y. 2011) (quoting United States v. Madoff, 586 F. Supp. 2d 240, 252 (S.D.N.Y. 2009) ("The court may also consider 'economic harm' as evidence of dangerousness."); United States v. Persaud, No. 05 Cr. 368 (TJM), 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); see also United States v. Reynolds, 956 F.2d 192, 193 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm.").

A court must also consider whether there is a risk that a defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness. . . ." 18 U.S.C. § 3142(f)(2)(B). "As with dangerousness, [a court considering pretrial release] must first determine whether the defendant presents a risk of obstruction, and then whether any condition or combination of conditions will reasonably assuage that risk." United States v. Campos, No. 19 Cr. 575 (FB), 2019 WL 7049953, at *1 (E.D.N.Y. Dec. 23, 2019) (citing United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988)).

If the court determines that pretrial release is appropriate, "the judicial officer shall order the pretrial release of the [defendant] . . . subject to the least restrictive further condition, or combination of conditions, that . . . will reasonably assure the safety of any other person or the community." 18 U.S.C. § 3142(c). Under the Bail Reform Act, such restrictions "may include the condition that the person . . . abide by specified restrictions on personal

associations . . . [or] any other condition that is reasonably necessary . . . to assure the safety of any other person or the community." Id.

## II.     THE PARTIES' ARGUMENTS

### A.     The Government

The Government contends that the condition prohibiting unsupervised contact between Gulkarov and Israilov (the "Defendants") is necessary to guard against witness tampering and obstruction of justice. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 3-4)

The Government notes that the Indictment alleges that – for approximately seven years – Gulkarov and Israilov led a $30 million healthcare fraud, money laundering, and bribery conspiracy. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 2; Indictment (Dkt. No. 1) ¶¶ 1-5) As part of that conspiracy, the Defendants together unlawfully owned and operated more than a dozen medical clinics, which they used to defraud insurance companies through billings for unnecessary medical treatment. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 1; Indictment (Dkt. No. 1) ¶¶ 2, 8) According to the Indictment, Gulkarov and Israilov arranged for the physicians employed at these clinics to prescribe drugs and medical tests – including medical resonance imagings ("MRIs") and electromyography and nerve conduction velocity tests – that were not medically necessary, and to order durable medical equipment that the patients did not need. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 1-2; Indictment (Dkt. No. 1 ¶¶ 3, 17)

The Government goes on to allege that "Gulkarov and Israilov concealed the [fraud scheme] through extensive witness tampering," including by arranging for nearly a dozen physicians to give perjurious testimony about, among other things, whether their medical practices were controlled by non-physicians; whether Gulkarov and Israilov were involved in incorporating the clinics; whether the physicians controlled the clinics' checkbooks and credit

6

cards, and the distribution of proceeds received by the clinics; and whether payments from the clinics' bank accounts to Gulkarov and Israilov were truly for "consulting," "advertising," "marketing," and "transportation." (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 2; Indictment (Dkt. No. 1) ¶¶ 19-20)

The Government further alleges – and the Indictment charges – that Gulkarov and Israilov used Robert Wisnicki, a lawyer, and his law firm (the "Wisnicki firm") to launder proceeds from their fraud scheme. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 2; Indictment (Dkt. No. 1) ¶¶ 11, 25, 32-38) The Defendants allegedly transferred hundreds of thousands of dollars of fraud proceeds to the Wisnicki firm, ostensibly in payment for legal services. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 2; Indictment (Dkt. No. 1) ¶¶ 11, 32-38) When the Wisnicki firm was served with a grand jury subpoena for documents reflecting payments from the fraudulent clinics to the Wisnicki firm, Gulkarov, Wisnicki, and others agreed to submit fabricated documents to the grand jury, including backdated, fabricated retainer agreements between a clinic physician and the Wisnicki firm. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 2-3; Indictment (Dkt. No. 1) ¶¶ 33-38) Gulkarov also allegedly arranged for Wisnicki to lie to law enforcement agents and the grand jury. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 3; Indictment (Dkt. No. 1) ¶¶ 52-54)

As to the Defendants' suggestion that another adult – presumably one of their wives – could ensure that they not have improper conversations at family gatherings, the Government argues that this proposal is not adequate to address the serious risk of future witness tampering or obstruction. (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 3) In this regard, the Government notes that Gulkarov and Israilov arranged for the fraudulent medical clinics to pay their spouses more than $400,000, using blank checks signed by the clinics' physicians. (Id.) Of

7

the $400,000 in fraud proceeds paid to the spouses, $200,000 was paid to a shell company registered to Israilov's wife. (Id.)

### B. Gulkarov and Israilov

Gulkarov and Israilov object to the proposed condition regarding contact with co-defendants and/or alleged co-conspirators only to the extent that this condition would prevent them from having contact with each other outside the presence of counsel. (Jan. 19, 2022 Jt. Def. Ltr. (Dkt. No. 34); Jan. 20, 2022 Israilov Ltr. (Dkt. No. 44))

As brothers-in-law, Gulkarov and Israilov frequently attend family gatherings together. They contend that an order preventing them from having contact with each other outside the presence of counsel would "interfere with their broader familial relationships," because their wives are sisters, and their families are extremely close. (Jan. 19, 2022 Jt. Def. Ltr. (Dkt. No. 34) at 2-3)  The two families have observed the Jewish Sabbath together for many years. (Id. at 3)  The Defendants' children are "inseparable cousins," and the condition barring unsupervised contact would "negatively impact[] . . . the children's development." (Id. at 1-2) Given their "tightknit and united family," the restriction sought by the Government would impose "an unnatural separation" on these routine contacts. (Id. at 3)

Defendants further argue that the Government has not "alleged that the two brothers-in-law conspired with each other" to obstruct justice, and has not offered evidence that either Defendant "ever conspired to tamper with witnesses." (Jan. 20, 2022 Israilov Ltr. (Dkt. No. 44) at 1-2)  As to the Government's argument that the Defendants' wives – through their receipt of fraud proceeds – are implicated in the Defendants' criminal conduct, Defendants assert that this proof "does not relate to the allegations of obstruction or witness tampering." (Id. at 3)

Defendants further suggest that their children's grandmothers, instead of Defendants' wives, could serve as the supervising adult during family gatherings. (Id.)

As noted above, Defendants have proposed a substitute provision that they contend is adequate to ensure "the safety of witnesses [and to] protect[] the integrity of these proceedings":

> Defendants Gulkarov and Israilov are permitted to meet, outside the presence of counsel, for the limited purpose of attending family gatherings. The defendants are not permitted to meet alone and must accompany at least one other adult at these meetings. Defendants also must notify Pretrial Services at least 24 hours in advance of their meeting. Defendants will notify their Pretrial Services Officer of the nature of the family event, and the place and time of the meeting.

(Jan. 19, 2022 Jt. Def. Ltr. (Dkt. No. 34) at 3)

### III.  ANALYSIS

The Indictment alleges a highly complex seven-year fraud scheme – led by the Defendants – that caused losses of $30 million. (Indictment (Dkt. No. 1) ¶¶ 1-5)  A grand jury has concluded that there is probable cause to believe that the alleged fraudulent scheme existed, and this Court – in setting bail conditions – is entitled to consider the financial harm caused by the alleged fraudulent scheme in setting bail conditions, along with the Indictment's allegations regarding obstruction of justice and the suborning of perjury. 18 U.S.C. § 3142(c); Dupree, 833 F. Supp. 2d at 253; Madoff, 586 F. Supp. 2d at 252; Persaud, 2007 WL 1074906, at *1.

The obstruction of justice and suborning perjury allegations of the Indictment are not incidental to the health care fraud and money laundering charges; they are instead central to the alleged illegal scheme. (Indictment (Dkt. No. 1) ¶¶ 2, 4, 19-21, 31-38; Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 2)  The alleged perjurious testimony given by nearly a dozen physicians – at the behest of Gulkarov and Israilov – is at the heart of the charged health care fraud conspiracy. (Indictment (Dkt. No. 1) ¶¶ 19-20; Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 3)  Similarly,

Gulkarov's alleged fabrication of documents – including backdated, fabricated retainer agreements – was central to the conspirators' efforts to prevent law enforcement from discovering the alleged health care fraud conspiracy, including the Defendants' laundering of fraud proceeds through a law firm. (Indictment (Dkt. No. 1) ¶¶ 10, 32-38; Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 2)

A provision barring contact with co-defendants – outside the presence of counsel – is a common feature of bail packages in cases involving allegations of highly organized criminal activity that continued over many years, and that involved alleged obstruction of justice. (See, e.g., SDFL Bail Disposition Form (Dkt. No. 23) at 41 (including such a provision in a pre-printed form)) Such a provision reflects a commonsense determination that where a defendant has shown a demonstrated willingness to subvert the justice system – whether by suborning perjury, tampering with witnesses, or submitting fabricated documents to a grand jury – special care must be taken to ensure that the defendant does not engage in similar conduct while on pretrial release. A provision requiring that communications between such defendants take place in the presence of counsel helps ensure that further acts subverting the justice process will not take place while the defendant is on pretrial release.

Here, Gulkarov and Israilov argue that no such provision is necessary, and that implementation of such a restriction will disrupt their family gatherings. None of their arguments opposing the restriction on contact is persuasive.

As an initial matter, Defendants complain that "the government's letter merely restates allegations in the Indictment. (Jan. 20, 2022 Israilov Ltr. (Dkt. No. 44) at 1) But "the [G]overnment may proceed by proffer" at a bail proceeding, and may rely on allegations in an indictment. United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Bellomo,

10

944 F. Supp. 1160, 1163 (S.D.N.Y. 1996) (citing United States v. Martir, 782 F.2d 1141, 1146 (2d Cir.1986)) ("The Court . . . has broad discretion with respect to the manner in which it obtains information bearing on the relevant [Bail Reform Act] factors.").

Here, the Government contends – and the Indictment charges – that Gulkarov and Israilov were the leaders of a highly organized and complex fraud scheme, and that suborning perjury and fabricating documents for submission to the grand jury were central aspects of the charged scheme.  (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 2 (citing Indictment (Dkt. No. 1) ¶¶ 19-20))  The Government contends that both men "tampered with the testimony of nearly a dozen medical practitioners over multiple years to induce them to commit perjury in [proceedings] before insurance companies."  (Id. at 3 (citing Indictment (Dkt. No. 1) ¶¶ 19-20))  The Government also proffers that the evidence against the Defendants includes "wiretapped calls, text messages, and cooperator testimony" that will show that Gulkarov and Israilov "orchestrated the [fraud] scheme . . . [through] their close contact and collaboration."  (Id.)

In arguing that the physicians were willing participants in the fraud (Jan. 20, 2022 Israilov Ltr. (Dkt. No. 44) at 2), Defendants miss the point.  The Indictment alleges that Gulkarov and Israilov caused the physicians to give perjurious testimony.  (Indictment (Dkt. No. 1) ¶¶ 2, 10, 19-20)  What matters is that Gulkarov and Israilov demonstrated a willingness and intent to suborn perjury; whether the physicians were willing participants or were coerced to commit perjury is secondary.

Defendants also argue that only Gulkarov is charged with obstruction, and that the Government has not alleged that Gulkarov and Israilov conspired to obstruct justice.  (Jan. 20, 2022 Israilov Ltr. (Dkt. No. 44) at 2)  As an initial matter, both Gulkarov and Israilov are alleged to have suborned perjury.  (Indictment (Dkt. No.1) ¶¶ 2, 10, 19-20; Jan. 20, 2022 Govt. Ltr. (Dkt.

No. 41) at 3) Such conduct shows a willingness to interfere with and subvert the justice system. Apart from that, it matters not whether Gulkarov and Israilov conspired to obstruct justice. The point is that a grand jury has determined that there is probable cause to believe that Gulkarov conspired to submit fabricated documents to the grand jury, and that he arranged for the alleged money laundering lawyer – Wisnicki – to lie to law enforcement and to the grand jury. (Indictment (Dkt. No. 1) at ¶¶ 32-38, 52-54) Given that there is probable cause to believe that Gulkarov obstructed justice and tampered with a witness after he became aware of the Government's investigation, it is reasonable to infer that he presents a risk of continuing to engage in such criminal conduct now that he has been charged. Gulkarov's bail package must contain provisions designed to address this risk going forward. As discussed above, a provision that limits contact with co-defendants to occasions where counsel is present helps address that concern.

As to the Defendants' argument that the condition sought by the Government is unduly restrictive, the prohibition on unsupervised contact means only that Gulkarov and Israilov cannot simultaneously attend family gatherings. The condition does not restrict in any fashion their contact with other family members, and it places no restriction whatsoever on the activities of the Defendants' wives, children, and other relatives gathering as they always have.

To the extent that the Defendants contend that their wives can supervise their contact at family gatherings, the evidence that the wives received hundreds of thousands of dollars in alleged proceeds from the fraudulent clinics (Jan. 20, 2022 Govt. Ltr. (Dkt. No. 41) at 3) obviously renders them unfit to ensure that their husbands abide by bail conditions. The Court rejects the Defendants' suggestion (Jan. 20, 2022 Israilov Ltr. (Dkt. No. 44) at 3) that their children's grandmothers can properly police this condition.

The requested condition barring contact between Gulkarov and Israilov outside the presence of counsel is reasonable and necessary given the circumstances discussed above.

## **CONCLUSION**

For the reasons stated above, Gulkarov is granted pretrial release on the following conditions:

1) a $10 million personal recognizance bond, co-signed by 5 financially responsible persons, and fully secured by real property pledged by the co-signors by confession of judgment. The co-signors shall sign the bond by no later than **January 27, 2022** and shall file confessions of judgment by no later than **January 31, 2022**. The addresses of the property to secure the bond are as follows:

   a. 11045 68TH ROAD FOREST HILLS, NY 11375
   b. 6872 112TH ST FOREST HILLS, NY 11375
   c. 332 BLANDINA STREET UTICA, NY 13501
   d. 312 BLANDUNA STREET UTICA, NY 13501
   e. 804 1ST STREET UTICA, NY 13501 f. 11023
   f. 71ST AVENUE FOREST HILLS, NY 11375
   g. 7010 173RD STREET FRESH MEADOWS, NY 11375;

2) travel restricted to the Southern District of New York, the Eastern District of New York, and the District of New Jersey;

3) surrender of all travel documents and no new applications for travel documents;

4) pretrial supervision as directed by the Pretrial Services Office; and

5) no contact outside the presence of counsel with co-defendants or with alleged co-conspirators in United States v. Rose, et al., 19 Cr. 789 (PGG), and United States v. Pierre, et al., 22 Cr. 19 (PGG).

Defendant Israilov's motion to modify the conditions of his pretrial release is denied.

Dated: New York, New York
January 24, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge